IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

MARILYN PICKERING,
     Plaintiff,

v.

                                   Docket No._____
                                   JURY DEMAND

CITY OF BAXTER, Tennessee;
AL REYES, in his individual capacity;
SETH JOHNSON, in his individual capacity; and
ZACK GLOVER, in his individual capacity,
     Defendants.

---

## COMPLAINT

---

Plaintiff, Marilyn Pickering, by and through counsel, brings this action seeking monetary damages against Defendants for violations of Plaintiff's civil rights guaranteed by the United States Constitution and Tennessee law, false arrest and incarceration, and malicious prosecution. In support of this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331 and §1343(a)(3).

2. This Court also has supplemental jurisdiction over claims asserted against Defendants under Tennessee State law pursuant to 28 U.S.C. §1367(a) over the state and local law claims alleged herein because they are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred within this District.

1

4. Plaintiff brings this lawsuit to redress Defendant's violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and his civil rights pursuant to 42 U.S.C. §1983, as well as violations of state law.

5. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States. Plaintiff brings this action pursuant to 42 U.S.C. §§1983 and 1988.

6. Plaintiff also seeks monetary damages (special, compensatory, and punitive) against Defendant, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## PARTIES

7. Plaintiff is a citizen of the United States and at all times relevant herein and a resident of Cookeville, Putnam County, Tennessee.

8. Defendant City of Baxter is a municipal corporation duly existing by reason of and pursuant to the laws of the State of Tennessee. Defendant City of Baxter is the governmental entity which governs and is liable for any malfeasance of the Baxter City Police Department and/or its employees.

9. Defendant Al Reyes who is sued personally and in his individual capacity, at all times relevant herein was the Chief of Police for the City of Baxter and was the policy maker who formulated, implemented and/or ratified officer training and the unconstitutional and unlawful policies referred to infra.

10. Defendant Seth Johnson, who is sued personally and in his individual capacity, at all times relevant to this complaint was a police officer employed by the Baxter City Police Department.

2

11.     Defendant Zack Glover, who is sued personally and in his individual capacity, at all times relevant to this complaint was a police officer employed by the Baxter City Police Department.

12.     The violation of individual rights as set forth herein is constant and widespread throughout the municipal government.

13.     Throughout the conduct, the defendants utilized their actual and apparent authority over the individuals to carry out the violations of the individual's rights guaranteed by the constitution, statutory and common law.

14.     The municipal defendant knew about the deprivation of individual rights by the individual defendants or should have known about it.

15.     Upon information and belief, similar complaints have been made about false arrests for driving under the influence prior to the events referred to in this complaint.

16.     At all relevant times, the municipal defendant staffed its police department with officers, including Defendant Johnson and Defendant Glover, who were unsupervised, undisciplined, inadequately trained and wholly unsuited to perform as police officers.

17.     At all relevant times, the Defendants knew, or should have known, that police officers, including Defendant Johnson, lacked requisite training to administer field sobriety tests to motorists traveling on the federal interstate roadway through Tennessee.

18.     At all relevant times, the Defendants knew, or should have known, that staffing a jail with employees who were unsupervised, undisciplined, inadequately trained and wholly unsuited to interact with the public would pose an excessive risk that members of the public would be subjected to out-of-control behavior such as requiring strip searches upon incarceration for an alleged alcohol-based driving under the influence charge when not being placed in general populations.

3

19.    At all relevant times, the Defendants knew, or should have known, that failing or refusing to take corrective measures against employees, including the individual defendants, who acted arbitrarily and in furtherance of personal hunches, or who were undisciplined, inadequately trained and unsuited to engage the general public would result in repeated incidents of violations of individual rights protected by the constitution, statutory and common law.

20.    At all relevant times, the defendants failed to adopt policies or procedures that would have prevented the violations of individual rights alleged herein, including but not limited to additional training and supervision.

## FACTS

21.    On or about June 9, 2025, Plaintiff was operating a motor vehicle on I-40E near the Cookeville, Tennessee Interstate Exit #280.

22.    On or about June 9, 2025, Plaintiff was stopped around 1:00 a.m. for a driving infraction by members of the Baxter City Police Department. Upon being stopped, Plaintiff fully cooperated with the police officer, Officer Johnson.

23.    Officer Johnson stated to Plaintiff that the basis of the traffic stop was minor violations including that Plaintiff had allegedly been speeding.

24.    Officer Johnson acknowledged that the sole purpose of the stop was based upon minor traffic violations, specifically speeding.

25.    Plaintiff does not dispute the speeding charge.

26.    Plaintiff handed Officer Johnson her license and registration.

27.    While reviewing Plaintiff's license and registration, Officer Johnson asked Plaintiff if she had been drinking and, if so, when.

4

28. Plaintiff replied to Officer Johnson that she had consumed two (2) drinks that day with her last alcohol consumption being around 6:00 p.m. on June 8, 2025, which was more than six (6) hours earlier in the day.

29. Officer Johnson requests that Plaintiff exit her vehicle.

30. Plaintiff complied and exited her vehicle.

31. Plaintiff needed no assistance to navigate the 19-27 inch step down from her vehicle, a Jeep Wrangler, or to support herself while standing in heeled, cowboy boots along the narrow shoulder of I-40E.

32. Officer Johnson asks Plaintiff again what time it is and when she last drank alcohol.

33. Plaintiff responded consistently with her initial response to Officer Johnson, her last alcoholic drink was around 6:00 p.m.

34. Officer Johnson told Plaintiff that Plaintiff had "slurred" speech.

35. Plaintiff asked for a breathalyzer test respectfully repeating she was sober.

36. Officer Glover joined Officer Johnson at the traffic stop.

37. During the time that Plaintiff and Officer Johnson waited for Officer Glover, Plaintiff exhibited no signs of intoxication.

38. Officer Johnson then administered field sobriety tests to Plaintiff.

39. Officer Johnson administered the (1) horizontal gaze nystagmus (HGN) test, which tracks involuntary jerking of the eyes as they gaze to the side; (2) walk-and-turn test; and (3) the one-leg stand test.

40. Officer Johnson elected to use the dark, narrow shoulder of I-40 with interstate traffic zipping by to conduct the field sobriety tests.

5

41.     Officer Johnson failed to administer the HGN test in the standardized fashion that training requires.

42.     Officer Johnson sought Officer Glover's opinion regarding Plaintiff's performance of the horizontal gaze nystagmus (HGN) test.

43.     Officer Glover noticed "slight" for one of the factors but deferred to Officer Johnson for cause to arrest Plaintiff.

44.     Officer Johnson improperly administered the test leading to unreliable results.

45.     Officer Glover did not correct Officer Johnson's test administration.

46.     Plaintiff is asked again when she last consumed alcohol and she consistently replies with her previous answers, around 6:00 p.m.

47.     Plaintiff, shaking with fear, admits to Officer Johnson and Officer Glover that she is nervous along the side of the interstate with two (2) male officers.

48.     Officer Johnson informs Plaintiff that her speeding offense and the results of the horizontal gaze nystagmus (HGN) test would be cause to arrest her.

49.     Officer Johnson and Officer Glover do not relocate Plaintiff to a safer area to conduct the walk and turn field sobriety test despite the shoulder being close to an interstate exit.

50.     Officer Glover tells Plaintiff she has red, glossy eyes.

51.     Plaintiff admits that she was up late on June 7, 2025, to the early morning of June 8, 2025, watching a television show.

52.     Plaintiff informs Officers Johnson and Glover that she did not understand the field sobriety test instructions and she's so nervous she cannot perform the test.

53.     Plaintiff removed her heeled boots at the officers' suggestion to complete the walk and turn test on the pebble-strewn shoulder.

6

54. Officers Johnson and Glover administer the walk and turn test with an "imaginary line" because there is no line to walk on.

55. Officers Johnson and Glover failed to administer the walk and turn test in a standardized fashion.

56. Plaintiff puts her heeled boots back on.

57. Officer Johnson administers the one-leg stand.

58. Plaintiff respectfully informs Officer Johnson she cannot perform the one-leg stand in her heeled boots.

59. Plaintiff is not allowed to remove her boots.

60. Plaintiff is not asked if she understands the instructions prior to conducting the test.

61. Unsatisfied with Plaintiff's seemingly successful performance of the sobriety tests, Officer Johnson placed Plaintiff under arrest on charges of Driving Under the Influence in violation of Tennessee Code Annotated §55-10-401.

62. Plaintiff's reasonable request to retain her house-key and to have someone transport her vehicle to her home were denied.

63. Plaintiff's personal property was towed with Plaintiff's vehicle at Officer Johnson's direction.

64. Officer Johnson seized Plaintiff and transported Plaintiff to the Putnam County Sheriff's Office for blood to be drawn by a nurse.

65. Plaintiff affirmatively states that at the time of her arrest, Plaintiff had neither committed a crime nor exhibited any behavior which would have given an ordinary person much less a law enforcement office reasonable cause to suspect that she was intoxicated.

7

66.     Plaintiff avers that her appearance, speech and eyes were normal and that an officer observing a driver successfully navigating a 19-to-27-inch step-down to exit a Jeep Wrangler while wearing heeled boots then standing without assistance would have reasonably believed that the driver to be sober.

67.     Further, a reasonable officer during the period of time it took for a second officer to arrive would have reasonably believed Plaintiff, standing on her own ability without swaying in heels, was sober.

68.     Plaintiff's subsequent negative blood alcohol and negative toxicology results following her arrest supported Plaintiff's statements to Officer Johnson and Officer Glover; she was sober.

69.     Plaintiff affirmatively asserts the field sobriety tests conducted of Plaintiff were an unreasonable and unlawful extension of the traffic stop without a proper basis.

70.     No reasonable person, much less a properly trained law enforcement officer, would have believed or suspected that Plaintiff was driving under the influence.

71.     Officer Johnson's failure to properly administer the horizontal gaze nystagmus (HGN) test in poorly lit conditions let to a false positive as substantiated by Plaintiff's negative blood test results for both alcohol and drugs.

72.     Plaintiff was arrested, booked into the local jail, and charged with driving under the influence.

73.     Plaintiff submitted to a blood toxicology test administered by the nurse at the Putnam County Jail.

74.     Plaintiff affirmatively states that her blood test was negative for **all** tested illegal substances.

8

75. Plaintiff was subjected to a strip search upon her incarceration at the Putnam County Jail despite Officer Johnson's report that he smelled alcohol in her vehicle, not illegal substances, when not being placed with the general inmate population.

76. Plaintiff was not permitted to make a phone call until 5:30 a.m. during her incarceration at the Putnam County Jail.

77. Plaintiff avers that Officer Johnson had no valid legal basis to extend the traffic stop after issuing her a traffic citation for speeding.

78. Officer Johnson had no valid legal basis to subject Plaintiff to perform field sobriety tests.

79. Officer Glover failed to correctly supervise Officer Johnson with the administration of the field sobriety tests.

80. Officer Johnson had no valid legal basis to arrest Plaintiff as a result of the incorrectly administered horizontal gaze nystagmus (HGN) test.

81. Officer Glover recognized that there was only a "slight" indication from the horizontal gaze nystagmus (HGN) test deferring to Officer Johnson to make the arrest.

82. Officer Johnson then falsely claimed in the affidavit of complaint in Case #25-CR-1713 that there was a smell of alcohol from Plaintiff's vehicle and person and that she had bloodshot eyes to support his arrest of Plaintiff for driving under the influence.

## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. §1983

This is an action for equitable relief and for redress for the violation of rights guaranteed to Plaintiff by state and federal laws, including: (a) damages for deprivations by Defendants acting under color of State law of Plaintiff's rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §1983 and §1988; (b) damages for deprivations by Defendants of Plaintiff's rights,

9

privileges and immunities guaranteed by Article I Sections 8, 9, 11 and 17 of the Tennessee State Constitution; and (c) damages based upon common law claims in tort.

**FIRST COUNT**
**Unlawful Seizure -Arrest Without Probable Cause**

83.     Plaintiff realleges and incorporates by reference the allegations set forth above.

84.     The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV.

85.     A Fourth Amendment violation occurs where: (1) a person is seized; and (2) the seizure is unreasonable.

86.     A seizure occurs where there is a physical force or a show of authority that in some way restrains the liberty of the person, and (as to a show of authority) that the person submits to the officers' show of authority.

87.     A person has been seized within the meaning of the Fourth Amendment if, in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

88.     Once a seizure occurs, the seizure must be reasonable.

89.     Officer Johnson stopped Plaintiff for speeding on I-40E at 1:30 a.m. on June 9, 2025.

90.     Plaintiff complied with the traffic stop by giving Officer Johnson her license and registration.

91.     Plaintiff did not argue with Officer Johnson, admitting that she was speeding.

92.     The stop should not have lasted any longer than was necessary for Officer Johnson to handle the processing of a traffic citation.

10

93. Officer Johnson improperly extended the stop by asking Plaintiff about her travel itinerary.

94. No reasonable person would have felt free to leave when being interviewed by law enforcement in possession of their driver's license and registration.

95. Plaintiff complied with Officer Johnson's request by telling him that she was returning home from a concert in Nashville, Tennessee.

96. Officer Johnson further improperly extended the traffic stop when Plaintiff informed Officer Johnson she was returning home from a concert.

97. Plaintiff complied with Officer Johnson's additional questioning that she was sober and consumed two (2) alcoholic drinks, the last being around 6:00 p.m. on June 8, 2025.

98. Plaintiff had to remind Officer Johnson that she already gave him her license and registration to handle the processing of a traffic citation.

99. Plaintiff repeatedly asked Officer Johnson for a blood test or breathalyzer during Officer Johnson's continued questioning because Plaintiff knew she was sober.

100. Officer Johnson requested Plaintiff exit her vehicle despite her consistent recall of when, where and how much she had to drink on June 8, 2025.

101. Plaintiff respectfully complied with Officer Johnson's request that she exit her vehicle.

102. Plaintiff successfully navigated the 19-to-27-inch step down from her Jeep Wrangler in heeled cowboy boots in the dark on the narrow shoulder of I-40E without assistance.

103. Plaintiff then stood on the side of the interstate in heeled cowboy boots without assistance or swaying or other indica of intoxication.

104. Officer Johnson requested additional assistance.

11

105. Officer Johnson and Plaintiff waited until Officer Glover arrived at the traffic stop.

106. During the time period that Officer Johnson and Plaintiff waited for Officer Glover to arrive, Plaintiff did not exhibit signs of intoxication and, indeed, was sober as her blood tests subsequently prove.

107. A reasonable officer would have recognized Plaintiff was indeed sober during the time period Officer Johnson waited with Plaintiff for Officer Glover to arrive and ended the extended traffic stop.

108. No reasonable person would believe that they would be free to leave the traffic stop.

109. Once Officer Glover arrived, Officer Johnson performed three (3) field sobriety tests the (1) horizontal gaze nystagmus (HGN) test; (2) walk-and-turn test; and (3) the one-leg stand test.

110. Officer Johnson's conduct during the stop exceeded the scope of the initial justification, a traffic stop which Plaintiff admitted to at least four (4) times. Once by extending the stop to interview Plaintiff about her travel plans; then by making the Plaintiff exit the vehicle; then again by forcing Plaintiff to wait until Officer Glover arrived to perform field sobriety tests; and then by performing field sobriety tests when Plaintiff exhibited no indica of intoxication.

111. Pursuant to Tennessee Code Annotated §55-9-107, once Officer Johnson issued a traffic citation for Plaintiff's alleged speeding violation, then Plaintiff should have been free to leave because minor traffic violations are not arrestable offenses under Tennessee law.

112. Officer Johnson violated Plaintiff's rights by unlawfully detaining Plaintiff past the time needed to write her a citation then requiring Plaintiff to exit her vehicle, wait on I-40 E

12

for another officer to arrive to perform field sobriety tests without reasonable suspicion or probable cause to believe that Plaintiff operating her vehicle under the influence.

113. The seizure of Plaintiff for allegedly driving under the influence was unreasonable because Officer Johnson lacked probable cause to extend the traffic stop past the time necessary to issue her a citation.

114. Plaintiff's request to retrieve personal property from her vehicle, a house-key, was denied.

115. Plaintiff's vehicle was towed from the scene despite Plaintiff's request to have someone come and retrieve her vehicle.

116. The illegal seizure of Plaintiff's person and vehicle by Defendant was done in such a manner that no reasonable person would have thought that they were free to leave.

117. The illegal seizure of Plaintiff's vehicle, personal property and person without probable cause was a deprivation of her civil rights to be free from unlawful seizures under the Fourth and Fourteenth Amendments, enforceable through 42 U.S.C. §1983.

118. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff suffered a violation of her constitutional rights, shame, humiliation, embarrassment, and was therefore damaged in amounts to be determined by a jury.

**SECOND COUNT**
**False Arrest and Illegal Search**

119. Plaintiff realleges and incorporates by reference the allegations set forth above.

120. To establish a state-law claim for false arrest, a plaintiff must prove: (1) a detention or restraint against the plaintiff's will; and (2) the unlawfulness of such detention or restraint.

13

121. False arrest requires that a defendant must have acted without a warrant or probable cause.

122. For substantially the same reasons stated above as to the preceding Fourth Amendment claim, Officer Johnson and Officer Glover falsely arrested Plaintiff.

123. The primary duty of a traffic stop is to enforce Tennessee's traffic laws.

124. As previously discussed, Plaintiff should have only received a citation if Officer Johnson observed Plaintiff committing a moving infraction such as speeding.

125. The purpose of Officer Johnson's initial stop was for a lawful purpose for Plaintiff's alleged moving traffic violations, speeding.

126. Plaintiff does not dispute she was spending.

127. Plaintiff complied with providing Officer Johnson with her license and registration.

128. Officer Johnson improperly extended the stop past the time to issue a citation to engage in a conversation with Plaintiff.

129. Plaintiff further complied with answering Officer Johnson's inquiries about her travel itinerary.

130. Officer Johnson asked Plaintiff to exit her vehicle after learning Plaintiff was returning home from a concert because he "smelled" alcohol.

131. Prior to being asked to exit the vehicle, Plaintiff respectfully and consistently responded to Officer Johnson's inquiry that her last alcoholic drink was at around 6:00 pm on June 8, 2025, almost over six (6) hours before the traffic stop around 1:30 a.m. on June 9, 2025.

132. Plaintiff complied with Officer Johnson's request to exit her vehicle by successfully navigating the 19-to-27-inch step-down to exit the Jeep Wrangler vehicle while wearing heeled, cowboy boots.

14

133. Once outside her vehicle, Plaintiff stood on the narrow shoulder of I-40E in heeled boots without assistance.

134. Plaintiff waited with Officer Johnson until Officer Glover arrived at the traffic stop.

135. At no time did Plaintiff exhibit any indica that she was intoxicated.

136. A reasonable person would not have believed that they would be free to go under similar circumstances.

137. Officer Johnson improperly extended the traffic stop until Officer Glover arrived without reasonable suspicion that Plaintiff was intoxicated or sufficient probable cause to continue to detain her.

138. Officer Johnson administered field sobriety tests on a hunch that Plaintiff was driving under the influence based upon the condition of Plaintiff's speech and then the condition of Plaintiff's eyes.

139. Officer Johnson administered the field sobriety tests in the dark, alongside the narrow shoulder of I-40.

140. Officer Glover administered the field sobriety tests in the dark, alongside the narrow shoulder of I-40.

141. Neither officer complied with the standardized fashion that field sobriety tests require.

142. The improper administration of the field sobriety tests caused Plaintiff to have a false positive resulting in emotional distress to take two (2) additional tests alongside I-40E in the dark with traffic zipping behind her.

143. Plaintiff clearly tells Officer Johnson she does not understand his instructions.

15

144. Officer Johnson inconsistently performs the field sobriety tests allowing Plaintiff to remove her heeled boots, allowing them to put them on and then not allowing her to remove her heeled boots again.

145. Officer Johnson subsequently placing Plaintiff under arrest was not for any lawful purpose as evidenced by Plaintiff successfully completing multiple field sobriety tests despite Officer Johnson failing to provide Plaintiff with instructions as required by standardized procedures.

146. These actions were a physical restraint, a show of authority, and a show of force.

147. There were no exigent circumstances justifying the arrest of the Plaintiff.

148. The false arrest of Plaintiff was a deprivation of her civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

149. An arrest is "unreasonable" where it is not based on probable cause to believe that the individual has committed or intends to commit a crime.

150. Officer Johnson's conduct during the stop exceeded the scope of the initial justification.

151. Based upon the arrest made without sufficient probable cause, Officer Johnson undertook a warrantless search for Plaintiff's person and property.

152. The illegal search of Plaintiff's person was a deprivation of her civil rights to be free from unlawful searches under the Fourth Amendment.

153. A reasonably well-trained officer would know that there were no specific or articulable facts to justify searching Plaintiff's person or property.

154. A reasonable person in Plaintiff's position would not have felt free to leave.

155. With respect to this show of authority, Plaintiff submitted without protest.

156. The seizure was made without probable cause and without legal process.

16

157. Officer Johnson transported Plaintiff to the Putnam County Jail following her unlawful arrest to provide a blood sample under Officer Johnson's control and authority.

158. The collection and analysis of a blood sample is a "search" within the meaning of the Fourth Amendment. See Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 618 (1989).

159. Plaintiff was further subjected to a strip search in violation of her Fourth Amendment Rights at the Putnam County Jail upon arrival even though Officer Johnson's arrest was alcohol-**not-** intoxicant related and she was not being placed in the general population.

160. Officer Johnson then fabricated numerous lies on the affidavit of complaint in Case #25-CR-1713 falsely claiming that there was smell of alcohol from Plaintiff's person and vehicle and that Plaintiff had bloodshot eyes.

161. Plaintiff's negative blood test results for alcohol and intoxicants support Plaintiff's representations to Officer Johnson and Officer Glover, that Plaintiff was sober at the time of her false arrest.

162. Plaintiff's charges were nolle prosequi on or around August 25, 2025.

163. A search is unlawful if it is made without probable cause.

164. Here, there was no probable cause to continue to extend the traffic stop. No reasonable officer would have determined that Plaintiff was driving under the influence under the totality of the circumstances.

165. Officer Johnson acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

### THIRD COUNT
### State Law Claims of Assault and Battery

166. Plaintiff realleges and incorporates by reference the allegations set forth above.

17

167. To establish a state law claim for assault and battery, Plaintiff must prove that Defendant (1) intentionally or knowingly causing Plaintiff to reasonably fear imminent bodily injury and (2) offensive touching.

168. Officer Johnson administered field sobriety tests based upon the condition of Plaintiff's speech.

169. Plaintiff complied with Officer Johnson's request for field sobriety tests while admitting she was nervous, visibly shaking and didn't understand his instructions.

170. Officer Johnson chose to conduct the field sobriety tests in the dark, alongside the narrow shoulder of I-40E without giving Plaintiff the required, standardized instructions.

171. Plaintiff contemplated and feared harmful and unwanted touching by Officer Johnson and Officer Glover, who each had the present ability to do so.

172. Plaintiff's fear was realized when Officer Johnson arrested her for driving under the influence despite no indica of intoxication.

173. Officer Johnson subsequently placing Plaintiff under arrest was not for any lawful purpose as evidenced by Plaintiff successfully completing multiple field sobriety tests.

174. These actions were a physical restraint, a show of authority, and a show of force.

175. There were no exigent circumstances justifying the arrest of the Plaintiff.

176. As a direct and proximate cause of the acts and omissions of Officer Johnson, Plaintiff suffered a genuine apprehension of fear of being sent to jail without probable cause, a violation of her constitutional rights, a reduced earning capacity due to the restrictions on her license; mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

177. As a direct and proximate result of the acts and omissions of Defendant Al Reyes, by and through his agent/employee, Plaintiff suffered a genuine apprehension of fear of being

18

sent to jail without probable cause, a violation of her constitutional rights, a reduced earning capacity due to the restrictions on her license; mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

178. Defendant City of Baxter is liable to Plaintiff for the acts of its public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of respondeat superior.

179. As a proximate result of Defendants' acts and/omissions as alleged throughout this entire complaint, Defendants assaulted Plaintiff.

## FOURTH COUNT
### State Law Claims of False Imprisonment

180. Plaintiff realleges and incorporates by reference the allegations set forth above.

181. Officer Johnson falsely imprisoned Plaintiff and violated her rights by seizing her person and depriving her of her liberty without probable cause to believe that she had committed a crime.

182. The false imprisonment was a deprivation of Plaintiff's liberty without the requisite due process of law as defined under the Fourteenth Amendment and in violation of Tennessee State law.

183. As a direct and proximate result of the acts and omissions of Defendant, by and through its agent/employee, Plaintiff suffered a seizure of her person, a violation of her constitutional rights, mental distress, shame, humiliation, reduced earning capacity, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

## FIFTH COUNT
### Monell Claim

184. Plaintiff realleges and incorporates by reference the allegations set forth above.

19

185.    On information and belief, the Baxter City Police Department in its policing of the 1-40 exit in Putnam County, Tennessee area has a custom and culture of violating the constitutional rights of others.

186.    Defendant City of Baxter violated Plaintiff's constitutional rights as alleged herein (1) by creating and maintaining unconstitutional customs and practices and (2) by having a *de facto* policy, custom or practice of failing to discipline, failing to investigate, and of retaining, personnel who falsely detain persons in violation of constitutional rights.

187.    Defendant City of Baxter's policies or customs caused and were the moving force and/or affirmative link behind some or all of the violations of Plaintiff's constitutional rights at issue in this case.

188.    Plaintiff is informed, believes, and thereupon alleges that these policies, practices, customs, and procedures are intentional and/or the result of deliberate indifference on the part of Defendant City of Baxter, by and through its decision makers, including Defendant Al Reyes and Defendant Danny Holmes.

189.    The Baxter City Police Department fails to properly train, supervise, investigate, and discipline its deputies and officers when violations of the constitutional rights of the citizens traveling in or around Putnam County, Tennessee occur.

190.    The Baxter City Police Department's failure to properly train its officers about the grounds to extend a traffic stop for investigating the offense of driving under the influence and the proper means for evaluating whether a citizen is driving while under the influence of a drug or intoxicant led to the deprivation of Plaintiff's constitutional rights.

191.    Plaintiff specifically alleges that Defendant City of Baxter's policy, custom, and/or practices, as described herein, were within the control of Defendant City of Baxter and

20

within the feasibility of Defendant City of Baxter, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff..

192. The Putnam County Sherriff's failure to properly train its jail staff about intake of arrests results in violation of constitutional rights by requiring detainees to submit to strip searches even when not being placed in the general inmate population.

## DAMAGES

193. Plaintiff realleges and incorporates by reference the allegations set forth above.

194. Defendant is liable to the Plaintiff for all wrongful acts which harmed and caused damage to her.

195. Defendant is liable to the Plaintiff for damages for all violations of his civil rights under the Constitution of the United States as defined by 42 U.S.C. §1983.

196. Based on the facts and circumstances described in this Complaint, and as a direct result of said acts and omissions of the Defendant, Plaintiff has suffered damage to reputation; past pain and suffering; past, present, and future emotional distress; medical expenses, legal expenses and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a trial by a JURY and that a judgment been entered against Defendant, jointly and severally, as follows:

1. Compensatory damages of at least One Million Dollars ($1,000,000.00) or such other amount supported by the evidence at trial;

2. Punitive damages in an amount to sufficiently deter Defendant from engaging in future behavior as described in this Complaint but in no less than Two Hundred Thousand Dollars ($200,000.00).

3. Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988;

21

4. Court costs;

5. Pre- and post-judgment interest at the legal rate; and

6. Any and all other and further relief as the Court deems appropriate.

Respectfully submitted,
MARILYN PICKERING, Plaintiff
by her attorneys,

CHANCEY-KANAVOS

BY: /s/ H. Franklin Chancey
H. FRANKLIN CHANCEY, BPR #013187
Attorney for Marilyn Pickering
P.O. Box 42
Cleveland, TN 37364
(423) 479-9186
franklin@cklplaw.com

22